Makybe Shinda HARSHAW *v.* STATE of Arkansas

CA CR 99-1421                                      25 S.W.3d 440

Court of Appeals of Arkansas
Division II
Opinion delivered September 13, 2000

*William R. Simpson, Jr.*, Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Leslie Plowman Fisken*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Makybe Shinda Harshaw was charged with and convicted of second-degree murder for the shooting death of Casey Cunningham. His conviction resulted in a twenty-year prison sentence. On appeal, appellant argues that the trial court erred in not instructing the jury on the lesser-included offense of manslaughter and that this constitutes reversible error. We agree and reverse and remand for a new trial.

When there is a rational basis for a verdict acquitting a defendant of the offense charged and convicting him of an offense included in the offense charged, an instruction on the lesser-included offense should be given, and it is reversible error to fail to give such an instruction when warranted. *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992). An instruction on a lesser-included offense should be given if it is supported by the slightest evidence. *Kail v. State*, 341 Ark. 89, 14 S.W.3d 878 (2000). However, we will affirm a trial court's decision to exclude instructions on a lesser-included offense if there is no rational basis for giving the instruction. *Id.; see also Cobb v. State*, 340 Ark. 240, 12 S.W.3d 195 (2000). "No right has been more zealously protected by this Court than the right of an accused to have the jury instructed on lesser-included offenses." *Rainey v. State*, 310 Ark. at 424, 837 S.W.2d at 456. This is so no matter how strongly the trial judge feels that the evidence weighs in favor of a finding of guilty on the more serious charge. *Robinson v. State*, 269 Ark. 90, 598 S.W.2d 421 (1980).

The evidence presented in this case indicated that appellant played cards and drank beer with his friends on the night of July 8, 1998. The gathering was at a friend's house in southwest Little Rock. Though appellant left to drive a friend home at one point, he returned to see Cunningham arguing with another one of his friends, a woman, outside the residence. The woman was the mother of Cunningham's child. At one point during the confrontation, Cunningham pointed his finger directly into her face. Appel-

lant approached, stating that the two did not need to be fighting, to which Cunningham took offense. Cunningham indicated that appellant should stay out of his business. Cunningham then stated, "If I got a problem, I just boom–boom–boom, like that," insinuating that if there were a problem, Cunningham would settle it with a gun. Thereafter, appellant and Cunningham walked to their respective cars. Appellant retrieved a shotgun from the trunk of his car; Cunningham stood by the driver's side door of his car and reached down into the car through the open window. As Cunningham came back up from reaching into the car, appellant shot him in the chest. Appellant testified that he was afraid of Cunningham because he was acting and talking "crazy" and that he thought Cunningham was about to shoot him. Appellant ran from the scene but was apprehended by the police several blocks away. After the presentation of the evidence in this case, the trial court instructed the jury on second–degree murder and justification. Second–degree murder in this context required proof that the accused knowingly caused the death of a person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5–10–103(a)(1) (Repl. 1997). Appellant proffered a jury instruction that would have permitted the jury to find appellant guilty of manslaughter, and a further instruction containing the definition of manslaughter from Ark. Code Ann. § 5–10–104(a)(3), i.e., whether appellant "recklessly caused the death" of Cunningham. Appellant's counsel urged the trial court to consider that although appellant believed he was justified in the use of deadly force, there nevertheless was evidence from which the jury could conclude that he formed this belief recklessly, meaning that he may have acted too hastily in deciding to shoot Cunningham. The trial court refused appellant's proffered manslaughter instructions. The trial court reasoned that appellant asserted self-defense and therefore intended to shoot Cunningham; thus, knowing intent coupled with a justification defense was inconsistent with reckless intent.

■ Appellant concedes that justification is not a defense to manslaughter. See Ark. Code Ann. § 5-2-614(a)(1997). This is an accurate statement of the law. However, we agree with appellant that asserting self-defense to second-degree murder did not preclude the jury from considering manslaughter because there was at least the "slightest evidence" to support a conviction on this lesser

offense. *See, e.g., Martin v. State*, 290 Ark. 293, 718 S.W.2d 938 (1986).

This case is significantly similar to the case of *Williams v. State*, 17 Ark. App. 53, 702 S.W.2d 825 (1986). In that case, appellant James Charles Williams was charged with the first-degree murder of his brother and was convicted of second-degree murder by a jury in Pulaski County Circuit Court. The only issue on appeal was whether the trial court committed reversible error by refusing to instruct the jury on the lesser-included offense of manslaughter. The supreme court held that it did and reversed and remanded for retrial.

The evidence indicated that appellant Williams, his brother, and two other men were playing cards one night when an argument arose when Williams' brother suspected Williams was cheating. The testimony from the two other men present at the game tended to establish that Williams pulled a knife on his brother first and that the brother defended himself with a chair. In contrast, Williams testified that his brother scooted away from the table quickly as the argument ensued, that Williams did not know what was going on, that his brother grabbed a chair and scooted back, that Williams went into his pocket to get a knife, that before he could retrieve the knife his brother struck him on the shoulder with the chair, and that then Williams started to swing the knife. Upon seeing blood coming from his brother, Williams got scared and ran, though he testified that he observed his brother still standing with the chair in his hands as he left. Williams testified that he did not mean to kill his brother and that everything happened very fast. The autopsy demonstrated that the victim died as a result of five stab wounds.

█ Our court concluded that Williams was entitled to a new trial because there was evidence presented upon which the jury might have found that he recklessly caused the death of his brother. We determined that, though unlikely, the jury could have believed Williams' version of events and found that the requisite criminal intent was lacking for any greater offense. It is the jury's sole prerogative to evaluate the conflicting evidence and to draw its own inferences. *Id.*

The State argues that this case is more aligned with *Cobb v. State, supra*, where the trial court was affirmed for refusing to give a

manslaughter instruction. We disagree because in that case, Cobb admitted to shooting an unarmed victim once in the back causing paralysis and then a second time while the victim was incapable of moving or causing harm to Cobb. There the justification defense was inconsistent with "recklessly causing" death. No rational basis existed there because there was no real or imagined threat, a scenario inconsistent with the evidence presented by the appellant before us today.

■ "[W]here a jury believes that the defendant shot under the belief that he was about to be assaulted, but that he acted too hastily and without due care, and was therefore not justified in taking life under the circumstances, he is guilty of manslaughter." *Bruder v. State*, 110 Ark. 402, 415, 161 S.W.2d 146 (1913). In the case before us now, all of the witnesses who were present that night took Cunningham's remarks to mean that he would shoot a gun to end any problem, and they all saw Cunningham thereafter reach for something in his car. The trial court committed reversible error by failing to give the proffered manslaughter instruction.

Reversed and remanded.

CRABTREE and MEADS, JJ., agree.