Michael MERRITT *v.* STATE of Arkansas

CA CR 02-808                    107 S.W.3d 894

Court of Appeals of Arkansas
Division II
Opinion delivered May 28, 2003

*Taumon & Koukol*, by: *Patrick J. Benca*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Jeffrey A. Weber*, Ass't Att'y Gen., for appellee.

TERRY CRABTREE, Judge. The appellant was charged with two counts of aggravated assault, but he was found guilty in a jury trial of the lesser-included offenses of first-degree assault for which he was sentenced to concurrent terms of thirty days in jail and fined $1,000. On appeal, he argues that the trial court erred in giving self-defense instructions for the jury to consider with regard to aggravated assault but not to any of the lesser-included offenses. We find no reversible error and affirm.

The charges levied against appellant arose from an incident that occurred on July 24, 2001, in which appellant admittedly brandished a gun in the presence of victims Lonnie Massey and Sheaquonea Hinton. Mr. Massey, a Kirby vacuum-cleaner salesman, testified that he and Ms. Hinton, a trainee, parked in front of appellant's house, which he approached while Ms. Hinton remained in the car. He said that he knocked and appellant answered the door but that appellant was not receptive to the offer of having his carpet cleaned for free and that appellant became upset and used profanity during the encounter. Massey said that he told appellant that he did not have to be rude, and he began walking back to the car. He said that appellant followed and threw something at him and that, as he was reaching for the door handle of the car, appellant nudged him in the chest. Appellant then got between Massey and the car, angrily telling Massey to get off his land. Massey said that he told appellant that he would leave if appellant would get out of his way and that appellant responded, "Well, I've got something that will take care of you." Massey said that he got in the car and that appellant kicked one of the doors, leaving a dent. He drove down the street, which was a dead end, and turned around. Massey related that, as he was driving back

past appellant's house, he saw appellant coming quickly across the yard with a gun in his hand. He said that appellant cocked it and pointed it in the direction of the car. Massey then pushed Ms. Hinton's head down, ducked, and drove to a nearby church parking lot where he called the police. He said that Ms. Hinton quit a few days later. There was testimony that her whereabouts were unknown and that officers had not been able to serve her with a subpoena for trial.

Appellant's version of events was markedly different. He testified that he heard someone approaching the house and that he went to the front door where he saw Massey with his hand on the door handle. Appellant said that Massey opened the door and let himself into the house. Appellant said that he told Massey that he was not interested in having his carpet cleaned. He said that he thought Massey had left but that Massey returned a second time. He said that he told Massey again that he was not interested. Appellant said that Massey came back a third time several minutes later and let himself inside the house again. Appellant said that he had been polite the first time Massey came inside but that he became increasingly angry the second and third times. Appellant said that he then forced Massey outside with his chest and told Massey to get off of his property. He said that, as Massey walked away, Massey stopped, turned, grabbed his crotch and said, "Fuck you." Appellant said that this made him even madder and that he began yelling at Massey to leave. He said that Massey walked to the car but that he stopped and turned towards him with his fists up, as if he were ready to fight. He said that Massey then put his right hand in his pocket. Appellant said that he then put his own hand in his rear pocket and told Massey that his hand had better be empty when he removed it from his pocket. He said that Massey fiddled around for a minute and then got in the car. He said that Massey then spun out and almost ran over him. He said that Massey then pulled into a neighbor's driveway where he saw Massey "bending over doing something." He said that Massey then pulled out of the driveway and started driving slowly down the street. Appellant said that he moved towards his truck where he kept a gun. He said that Massey then pulled into his yard and that Massey had his hands up and that he thought he saw a weapon. He said that he then retrieved his gun and stood behind the door of his truck. He said that Massey sat there for a few seconds and then left.

In discussing jury instructions, the trial court agreed that the jury was to be given instructions on the charged offense of aggravated assault, as well as the lesser-included offenses of first-, second-, and third-degree assault. The court also ruled that appellant was entitled to have the jury instructed on the defense of justification, and the court proposed to give AMCI 704 and 705 which, respectively, pertain to the use of force and deadly force in defense of persons. However, the court's instructions applied these defenses only to the charge of aggravated assault. Appellant argued that the defenses should also apply to the lesser-included offenses, and by way of proffer, appellant asked that the instructions be redacted to delete the reference to "aggravated assault" so that the instructions would apply to all of the offenses. The trial court declined appellant's request and gave the instructions that made justification a defense only to the offense of aggravated assault. Appellant contends that the trial court's ruling was in error. We disagree.

■■ It is well established that one requesting a jury instruction must prepare and submit to the court a correct instruction, and where he fails to do so, he is in no position to argue on appeal that the request should have been granted. *Wood v. State*, 20 Ark. App. 61, 724 S.W.2d 193 (1987). The appellant may not complain of the refusal of the trial court to give an instruction which is only partially correct, as it is his duty to submit a wholly correct instruction. *Coleman v. State*, 12 Ark. App. 214, 671 S.W.2d 221 (1984). The instructions appellant proposed were not wholly correct because justification cannot be interposed as a defense to the offenses of first- and second-degree assault.

■ A person is justified in using force or deadly force only if he "reasonably believes" that the situation necessitates the defensive force employed. Ark. Code Ann. §§ 5-2-606 and 5-2-607 (Repl. 1997). Both first-degree and second-degree assault are committed if the accused acts "recklessly." Ark. Code Ann. §§ 5-13-205 and 5-13-206 (Repl. 1997). The defense of justification with its requirement of reasonableness is inconsistent with the element of recklessness found in these assault offenses. *See Cobb v. State*, 340 Ark. 240, 12 S.W.3d 195 (2000); *Kendrick v. State*, 6 Ark. App. 427, 644 S.W.2d 297 (1982); *accord Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001). Thus, Arkansas Code Annotated section 5-2-614 (Repl. 1997) provides that justification

is not available as a defense to an offense for which recklessness suffices to establish culpability. *See Harshaw v. State,* 71 Ark. App. 42, 25 S.W.3d 440 (2000), *aff'd Harshaw v. State, supra.* As is stated in the Original Commentary to § 5-2-614, formerly Ark. Stat. Ann. § 41-514:

> Section 41-514 applies to situations in which force is recklessly or negligently employed. Under such circumstances the defense of justification cannot be successfully interposed in a prosecution for an offense established by proof of reckless or negligent conduct.

Therefore, appellant was not entitled to justification instructions with regard to first- and second-degree assault, and the trial court did not err in refusing an instruction that would have made justification a defense to those offenses.

Affirmed.

GRIFFEN and VAUGHT, JJ., agree.